**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**


ILLINOIS CENTRAL RAILROAD COMPANY                    PLAINTIFF


VERSUS                          CIVIL ACTION NO. 5:07cv18-DCB-JMR


WARREN E. TURNER, JR., et al.                    DEFENDANTS

<u>OPINION & ORDER</u>

This matter comes before the Court on a Motion for Summary
Judgment [docket entry no. 73] filed by the defendants William Guy
and Thomas Brock ("Guy and Brock" or "Defendants").  Having
carefully considered the Motion, the plaintiff's responses thereto,
applicable statutory and case law, and being otherwise fully
advised in the premises, the Court finds and orders as follows:

**I. BACKGROUND**

The plaintiff in this case is Illinois Central Railroad
Company ("Illinois Central" or "IC").  The first defendant is
Warren R. Turner, Jr. ("Turner"), a former plaintiff in an
asbestos-related lawsuit against Illinois Central styled <u>Elbert
Eakins, et al. v. Illinois Central Railroad Co.</u>, No. 2001-65
(Jefferson County Ct. Miss.) ("<u>Eakins</u>").  The other two defendants
are William S. Guy and Thomas W. Brock ("Guy and Brock"), Turner's
counsel in the <u>Eakins</u> action.

The <u>Eakins</u> action was filed by Guy and Brock in the Circuit
Court of Jefferson County, Mississippi, in 2001.  Therein, 175

plaintiffs, including Turner, sought to recover from Illinois Central for injuries they sustained as a result of their exposure to asbestos during employment with the railroad. IC and Guy and Brock reached a settlement in the Eakins action in August 2002. As stipulated in the settlement agreement, before Illinois Central would pay any claim, Guy and Brock would obtain from each claimant a completed "Pulmonary Questionnaire," which disclosed various information about the claimant including his prior medical treatment for asbestos-related injuries as well as any prior involvement in other asbestos-related lawsuits.

In settlement of his claim, Turner provided his sworn answers to a set of interrogatories on January 25, 2002. In response to a question pertaining to his involvement in other personal injury suits, Turner responded that he "has not filed any suit for damages for any personal injury other than this case." (Defs.' Mot. for Summ. J. Ex. 11). In so answering, Turner failed to disclose that he was a plaintiff in a lawsuit that had been filed in the Circuit Court of Jefferson County, Mississippi, in 1995 styled David Cosey, et al. v. E.D. Bullard Co., et al., Civil Action No. 95-0069 (Jefferson County Ct. Miss.) ("Cosey").

After Turner responded to Illinois Central's interrogatories, Guy and Brock delivered the sworn responses to Illinois Central. Illinois Central subsequently settled the case with Turner, and the parties executed a release of any remaining claims against Illinois

Central on December 10, 2002.  IC then delivered a settlement check for $120,000.00 to Guy and Brock in settlement of Turner's claim.

This procedure was followed in the settlement of many of the claims in the Eakins action.  In January 2004, however, Illinois Central discovered that Fred Tyler ("Tyler"), another of the plaintiffs in the Eakins action, had provided inaccurate information on his Pulmonary Questionnaire.  Specifically, after reviewing medical records obtained from Tyler's treating physician in accordance with the settlement agreement, Illinois Central learned that Tyler had failed to disclose his involvement as a plaintiff in the Cosey lawsuit that had been filed in 1995. Tyler's involvement in this earlier suit gave Illinois Central a statute of limitations defense against his claim.  Upon this discovery, Guy and Brock voluntarily dismissed Tyler from the Eakins case.

After discovering the "Fred Tyler issue", Illinois Central began to question whether the procedures employed by Guy and Brock were sufficient to obtain the most accurate information from their clients.  In March 2004, Guy and Brock signed a handwritten agreement with Illinois Central wherein Guy and Brock agreed to provide written assurances regarding the procedures they had used to obtain accurate information on the Pulmonary Questionnaires. Later, in a letter dated April 22, 2004, Guy and Brock asserted

that the issue of inaccuracies on the Pulmonary Questionnaires was not a "systemic problem" and agreed to provide affidavits from all remaining unpaid Eakins plaintiffs regarding whether they had been involved in prior asbestos-related litigation.

The unpaid Eakins plaintiffs subsequently submitted affidavits in accordance with this agreement. Therein, the affiants represented that they had not been involved in any asbestos case other than Eakins. Illinois Central later discovered that some of these affidavits failed to disclose the plaintiffs' involvement in other asbestos-related cases, including McNeil v. Dresser Industries, Inc., No. 2002-283-CV9 ("Dresser") and Phillip Acuff v. American Optical Corp., et al., No. 2003-159-CV8 ("American Optical"), both of which were filed after the Eakins action. Upon this discovery, Illinois Central sought to have the plaintiffs' claims dismissed based on their misrepresentations.

The circuit court conducted a series of hearings related to the affidavits and questionnaires. During these hearings, IC not only argued that dismissal was proper because certain Eakins plaintiffs had intentionally failed to disclose their involvement in Dresser and American Optical but also again raised its concerns that the Fred Tyler issue was a recurring one. Guy and Brock took responsibility for the inaccuracies related to American Optical and Dresser, claiming that they mistakenly thought that they were to disclose only prior asbestos litigation. As such, Guy and Brock

4

explained, they did not instruct the Eakins plaintiffs to include their involvement in Dresser and/or American Optical because those cases were filed after Eakins. As to the Fred Tyler issue, Guy and Brock maintained their position that it had not happened with any other claimants. Ultimately, the circuit court ruled that dismissal of the plaintiffs' claims was not warranted because the plaintiffs' failures to disclose their involvement in Dresser and American Optical (post-Eakins cases) was not intentional and did not prejudice IC. The evidence before this Court does not show that the circuit court made any rulings with regard to other cases similar to that of Fred Tyler.

After the circuit court denied Illinois Central's motion to dismiss, Illinois Central filed a motion for reconsideration. Illinois Central's motion to reconsider was denied on January 28, 2005. Illinois Central appealed that decision to the Mississippi Supreme Court, where the case was affirmed on August 3, 2006.

Illinois Central then instituted the instant action in this Court on November 22, 2006, by filing a complaint solely against Turner. Therein, Illinois Central pled a single fraud claim against Turner and sought a judgment for $120,000.00, attorney fees, expenses, punitive damages, and pre- and post-judgment interest as relief therefor. Illinois Central alleged that it was defrauded by Turner when, in providing sworn answers to interrogatories during the settlement of the Eakins case, Turner

5

intentionally failed to disclose that he had made an asbestos claim in an earlier action styled <u>David Cosey, et al. v. E.D. Bullard Co., et al.</u>, No. 95-0069 (Jefferson County Ct. Miss.) ("<u>Cosey</u>"). IC claimed that if Turner had disclosed his prior <u>Cosey</u> claim, it would not have paid Turner and his attorneys Guy and Brock $120,000.00 in settlement of his <u>Eakins</u> claim because such disclosure would have revealed that Turner's <u>Eakins</u> claim was time-barred by the three-year statute of limitations period of the Federal Employer Liability Act, 53 STAT. 1404, 45 U.S.C. §§ 51-60 (2006).

As part of discovery in the case, IC deposed Turner on January 10, 2008. At that time, Turner testified that prior to his settlement in the <u>Eakins</u> action he had informed Guy and Brock, his attorneys in the <u>Eakins</u> action, of his prior involvement in the <u>Cosey</u> litigation. Soon thereafter, Illinois Central sought leave to file an amended complaint to add Guy and Brock as defendants in its pending fraud action. On February 1, 2008, Magistrate Judge Roper entered an order granting Illinois Central's request.

Illinois Central filed its First Amended Complaint on February 4, 2008. Therein, IC maintains its original fraud claim against Turner. As to Guy and Brock, Illinois Central brings one count of fraud and one count of breach of the duty of good faith and fair dealing. Specifically, Illinois Central alleges that Guy and Brock are liable by way of their either knowing or reckless concealment

of the fact that Turner had been a plaintiff in the <u>Cosey</u> action,
which information Illinois Central posits would have provided it a
defense in the <u>Eakins</u> action based on statute of limitations.  This
concealment of the <u>Cosey</u> action, the plaintiff contends, misled
Illinois Central into entering the settlement agreement with Turner
in the <u>Eakins</u> case.

On December 8, 2008, Guy and Brock filed their first motion
for summary judgment wherein they argue that the plaintiff's claims
are barred by the applicable statute of limitations.  Illinois
Central filed its response in opposition on January 8, 2009.  Guy
and Brock filed their rebuttal on May 15, 2009.  A surreply was
filed by Illinois Central on June 16, 2009.  Guy and Brock filed a
surrebuttal on June 25, 2009.  This motion and all responses
thereto now are before the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c).[1]  The party

---

[1]    "A fact is 'material' if its resolution in favor of one
party might affect the outcome of the lawsuit under governing law.
An issue is 'genuine' if the evidence is sufficient for a
reasonable jury to return a verdict for the non-moving party."
<u>Ginsberg 1985 Real Estate Partnership v. Cadle Co.</u>, 39 F.3d 528,
531 (5th Cir. 1994) (citations omitted).

moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## III. ANALYSIS

Guy and Brock assert that Illinois Central's fraud claim is barred by the applicable statute of limitations, which the parties do not dispute is three years from the date the cause of action accrued pursuant to Mississippi Code § 15-1-49.[2]  The Court also understands the parties to agree that the cause of action accrued, at the latest, on December 17, 2002, when the settlement between Illinois Central and Turner was consummated.  The original complaint in this case was filed on January 31, 2007, but only named Turner as a defendant.  Guy and Brock were not added as defendants until Illinois Central filed its amended complaint on February 4, 2008.  Since this exceeds the three-year limit, Guy and Brock argue, Illinois Central's claims against them must be dismissed as untimely.  In response, Illinois Central contends that the statute of limitations was tolled by reason of Guy and Brock's fraudulent concealment of Illinois Central's claims.

Illinois Central's position is that the statute of limitations was tolled pursuant to Mississippi's Fraudulent Concealment Statute which reads as follows:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not

---

[2]     "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."  Miss. Code Ann. § 15-1-49(1).

> before, the time at which such fraud shall be, or with
> reasonable diligence might have been, first known or
> discovered.

Miss. Code Ann. § 15-1-67. In order for a plaintiff to show that the limitations period applicable to his case was tolled by fraudulent concealment, he must show "'both (1) an affirmative act to conceal the underlying tortious conduct, and (2) a failure to discover the factual basis for the claims despite the exercise of due diligence.'" <u>Smith v. First Family Financial Services, Inc.</u>, 436 F.Supp.2d 836, 840-41 (S.D. Miss. 2006) (quoting <u>Boone v. Citigroup, Inc.</u>, 416 F.3d 382, 391 n. 11 (Miss. 2004)). Additionally, "'[t]he affirmative act of concealment must have occurred after and apart from the discrete acts upon which the cause of action is premised.'" <u>Id</u>. (citations omitted).

Illinois Central bears the burden of proving that the statute of limitations was tolled. <u>Ishee v. Liberty Nat. Life Ins. Co.</u>, 2006 WL 2524217 (S.D. Miss. Aug. 30, 2006) (unpublished) (citing <u>Gulf Nat'l Bank v. King</u>, 362 So.2d 1253, 1255 (Miss. 1978), <u>Hall v. Dillard</u>, 739 So.2d 383, 387099 (Miss. App. 1999)). "[I]n order to toll the limitations period to survive summary judgment, the plaintiffs must offer proof of a genuine issue of material fact that [Guy and Brock] engaged in an affirmative act of concealment and that they (the plaintiffs) acted with due diligence to discover their claims but were unable to do so." <u>Id</u>. (citing <u>Robinson v. Cobb</u>, 763 So.2d 888 (Miss. 2000)). This, Illinois Central has

done.

First, Illinois Central has provided evidence that Turner made inaccurate representations during the settlement of his <u>Eakins</u> claim, namely that he failed to disclose his involvement in the <u>Cosey</u> action, which Illinois Central claims induced it to settle his claim in the <u>Eakins</u> action.  Furthermore, Illinois Central has put forth evidence, in the form of Turner's deposition testimony, that Turner informed Guy and Brock of his involvement in the <u>Cosey</u> action before Guy and Brock filed Turner's claim in the <u>Eakins</u> action.  Finally, Illinois Central has shown that Guy and Brock made repeated representations to Illinois Central that the information in the <u>Eakins</u> plaintiffs' pulmonary questionnaires and affidavits was accurate and that Guy and Brock were not responsible for any misinformation.  These facts support IC's claim that Guy and Brock knowingly concealed Turner's involvement in <u>Cosey</u> and are sufficient to create a genuine issue as to whether Guy and Brock engaged in affirmative acts of fraudulent concealment.

Illinois Central has also provided sufficient evidence to create an issue of fact regarding the second element of fraudulent concealment--due diligence.  As to this second requirement, "the plaintiffs must show that they failed, despite the exercise of due diligence on their part, to discover the facts that form the basis of their [] claim."  <u>In re Catfish Antitrust Litigation</u>, 908 F.Supp. 400, 407 (N.D. Miss. 1995).  "'[T]he test on whether to

toll the statute of limitations is whether a reasonable person similarly situated would have discovered potential claims.'" <u>Pope</u>, 992 So. 2d at 1198-99 (quoting <u>Andrus</u>, 887 So. 2d at 180)).

Illinois Central became aware of the Fred Tyler issue in January 2004. It immediately confronted Guy and Brock with the situation by letter on January 21, 2004. Guy and Brock addressed Illinois Central's concerns by explaining the Fred Tyler incident as an isolated occurrence and offering assurances about the accuracy of the remaining plaintiffs' disclosures. On April 22, 2004, Guy and Brock further reassured Illinois Central by claiming that the problem was not "systemic" and offering to supply affidavits from all remaining plaintiffs to ensure that they had not been involved in prior asbestos litigation. (Defs.' First Mot. for Summ. J. Ex. 6.)

Furthermore, Guy and Brock in open court ensured the full disclosure of all prior asbestos litigation. As noted earlier herein, during the settlement of the <u>Eakins</u> case, Illinois Central repeatedly raised the issue of the failure of the <u>Eakins</u> plaintiffs to disclose their involvement in the <u>American Optical</u> and <u>Dresser</u> cases. In explaining those omissions, Guy and Brock stated that they understood Illinois Central's request to be only for disclosure of prior asbestos litigation, not all asbestos litigation. Guy and Brock assured the circuit court and Illinois Central that all such prior litigation had been reported. As an

example, during a motion hearing before Circuit Court Judge Lamar Pickard on June 21, 2004, Illinois Central expressed its concern of the conveyance of inaccurate information on the Pulmonary Questionnaires. (Defs.' First Mot. for Summ. J. Ex. 7.) In response to a question asked by the court about whether misinformation had been provided on any other Pulmonary Questionnaires, Brock responded, "No sir. It's not happened and not going to happen." (Def.'s First Mot. for Summ. J. Ex. 7 p. 5.)

In yet another proceeding before Judge Lamar on October 15, 2004, Brock described the Fred Tyler issue and stated affirmatively as follows:

> ...we [Guy and Brock] undertook voluntarily to assure the railroad that their -- that the remaining unpaid plaintiffs weren't involved in some similar prior litigation like back in the mid-'90s that might give rise to a potential statute of limitations defense. So we went to all of our unpaid plaintiffs, talked to them individually, I did it myself, and to make sure, you know, that they weren't involved in any prior asbestos litigation, they had not some other attorney that had represented them in an asbestos case that might give rise to a statute of limitations defense.

(Pl.'s Response, Ex. 4, p. 3).

Brock went on further to state that the Eakins plaintiffs "just know that they weren't in prior litigation." (Pl.'s Response Ex. 4, p. 3). Furthermore, in addressing the failure of the affidavits to disclose the Eakins plaintiffs' involvement in the Dresser and American Optical cases, Brock stated, "It's my fault, but I want the court and these attorneys to know that we were bending over

13

backwards to try to establish to Illinois Central and these attorneys that these unpaid plaintiffs had not been involved in prior asbestos litigation." (Pl.'s Response, Ex. 4, p. 4)

In a third hearing, held on January 24, 2005, also before Judge Pickard, Illinois Central urged the court to reconsider its prior denial of its motion to void the settlement based on the Eakins plaintiffs' failure to disclose their participation in the Dresser and American Optical cases. In response, Brock yet again represented to the court that they had disclosed all prior litigation. (Pl.'s Response, Ex. 7, pp. 4-5, 10-11.)

Taken together, these facts show that Illinois Central repeatedly expressed its concern over the inaccuracies of the information provided by the Eakins plaintiffs. Their concerns were met time and again with assurances from Guy and Brock that all prior litigation had been disclosed. The Court finds that proof of these repeated inquiries and multiple assurances creates at least an issue of fact regarding whether Illinois Central exercised due diligence such that they should have discovered their claims against Guy and Brock prior to the expiration of the statute of limitations.

In conclusion, fact issues remain that preclude summary dismissal of this action based on the running of the statute of limitations. Accordingly, Guy and Brock's motion for summary judgment based on the statute of limitations is denied.

**IT IS HEREBY ORDERED** that the first Motion for Summary Judgment [docket entry no. 73] filed by Guy and Brock is **DENIED.**

**SO ORDERED**, this the 6th day of August 2009.


       s/ David Bramlette

**UNITED STATES DISTRICT JUDGE**